UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
D.C., an infant by his mother and natural guardian,
Tie'Anna Collins, TIE'ANNA COLLINS,
individually, and TOAJACK BROWN, individually
and as the Proposed Administrator of the Estate of
Tahlil Brown,

                                    Plaintiffs,

      - against -

ELDRED CENTRAL SCHOOL DISTRICT,
TRACI FERREIRA, and MONIQUE-GALE
MESSINA,

                                  Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-9714 (CS)

Appearances:

Jay M. Weinstein
Woodmere, New York
*Counsel for Plaintiffs*

Gerald S. Smith
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the motion to dismiss of Defendants Eldred Central School District

(the "District"), Traci Ferreira and Monique-Gale Messina.  (ECF No. 26.)  For the following

reasons, the motion is GRANTED.

## I.      **BACKGROUND**

      For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in

Plaintiffs' Second Amended Complaint.  (ECF No. 25 ("SAC").)

A.     <u>Facts</u>

At all relevant times, infant Plaintiff D.C., represented in this action by his mother

Plaintiff Tie'Anna Collins, was a ninth-grade student, and Tahlil Brown ("Tahlil"), represented

in this action by his father and administrator of his estate Plaintiff Toajack Brown, was an

eleventh-grade student at Eldred Junior Senior High School (the "School").  (SAC ¶¶ 3, 12, 16-

18.)  Defendant Messina was a teacher at the School, and Defendant Ferreira was the

superintendent of the District.  (*Id.* ¶¶ 13-14.)

On February 7, 2024, D.C. and Tahlil, who are African American, attended a study hall

period supervised by Messina.  (*Id.* ¶¶ 18, 20-21.)  They were the only African American

students in the study hall class.  (*Id.* ¶ 26.)  During the period, Messina questioned D.C. and

Tahlil about the color of their skin and the texture of their hair, and asked whether each was a

"'pure bred' Black."  (*Id.* ¶ 27.)  Plaintiffs allege, without further elaboration, that the District

and Ferreira "knew, or upon reasonable research and inspection, should have known that

defendant, M[essina], had racially insensitive tendencies towards African American persons in

general and specifically, students at the [School]," (*id.* ¶ 22), and (somewhat contradictorily) that

the District had "exclusive knowledge . . . of [Messina's] racial insensitivities towards African

Americans prior to September, 2023," (*id.* ¶ 23).  Prior to this incident, Messina had no contact

with either D.C. or Tahlil.  (*Id.* ¶ 25.)

Plaintiffs reported the incident to the District administration.  (*Id.* ¶ 28.)  By letter dated

March 7, 2024, the District informed Plaintiffs that after an investigation pursuant to the Dignity

for All Students Act ("DASA"), N.Y. Educ. Law §§ 10-18, the District determined that the

allegations that Messina had "engaged in an inappropriate and racially discriminatory

conversation that utilized discriminatory vocabulary and statements" were founded.  (*Id.* ¶¶ 29-

30; ECF No. 21 Ex. A.)[1]  The letter further informed Plaintiffs that the District would place a disciplinary letter in Messina's employment file and require her to participate in professional development training in the spring and for the 2024-2025 school year.  (ECF No. 21 Ex. A.)  Plaintiffs allege that the District "condoned the actions of [Messina]" by "not taking substantial punitive actions against her," and that Defendants did not "take any steps to protect D.C. and Tahlil . . . from being subjected to further acts of racial prejudice, discrimination, and unwarranted hate . . . ."  (SAC ¶ 32.)

    **B.**    __Procedural History__

       On November 12, 2024, Plaintiffs commenced this action in New York Supreme Court, Sullivan County, asserting claims under Title VII and for negligent hiring, supervision, training and retention based on Messina's conduct and Ferreira's and the District's response.  (*See generally* ECF No. 1-1.)  On December 17, 2024, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1331.  (ECF No. 1.)  On January 9, 2025, Defendants filed a pre-motion letter in anticipation of their motion to dismiss.  (ECF No. 9.)  Plaintiffs responded by requesting permission to file a Proposed Amended Complaint, (ECF No. 11), which the Court granted, (ECF No. 12).  Plaintiffs filed their Amended Complaint on January 30, 2025, adding a claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.  (ECF No. 13.)  At the pre-motion conference on

---

[1] Plaintiffs attached Exhibit A – the March 7, 2024 letter to the students' parents from the District detailing the results of the investigation into Messina's February 7, 2024 conduct – to every version of their complaint except the operative version of the SAC, (ECF No. 25).  (*See* ECF Nos. 1-1, 13, 14, 21.)  ECF No. 25 is otherwise identical to ECF No. 21, and Plaintiffs filed ECF No. 25 only to correct the filing errors identified with respect to ECF No. 21.  (*See* Dkt. Entry dated Apr. 29, 2025; ECF No. 24.)  Moreover, Plaintiffs refer to the letter in the SAC and in their opposition brief as though they had attached it as Exhibit A to the SAC.  (*See* SAC ¶ 36; ECF No. 31 ("Ps' Opp.") at 2-3.)  The Court therefore believes that the omission of the attachment from the SAC was unintentional and thus will treat Exhibit A as attached to the SAC.

March 14, 2025, I granted Plaintiffs leave to amend their complaint again and set a briefing schedule for the motion to dismiss.  (*See* Minute Entry dated Mar. 14, 2025.)  Plaintiffs filed their Second Amended Complaint on June 11, 2025, removing the claims under Title VII and for negligent hiring, supervision, training and retention.  (ECF No. 25.)  The instant motion followed.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    **DISCUSSION**

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory . . . , subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that (1) the challenged

conduct was attributable at least in part to a person who was acting under color of state law and

(2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United

States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

The Fourteenth Amendment to the U.S. Constitution provides that "[n]o state shall . . .

deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV, § 1. "[T]he Equal Protection Clause bars the government from selective adverse treatment

of individuals compared with other similarly situated individuals if such selective treatment was

based on [an] impermissible consideration[] such as race . . . ." *Bizzarro v. Miranda*, 394 F.3d

82, 86 (2d Cir. 2005). "To prevail on a § 1983 claim of race discrimination in violation of equal

protection, the law requires a plaintiff to prove the defendant's underlying racially discriminatory

intent or purpose." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012). "In the school setting, a

violation of the Equal Protection Clause can arise from direct action or due to deliberate indifference." *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, 722 F. Supp. 3d 148, 163 (W.D.N.Y. 2024), *reconsideration denied*, No. 22-CV-6567, 2024 WL 5244392 (W.D.N.Y. Dec. 30, 2024); *see DiStiso*, 691 F.3d at 240-41.

    **A.**   <u>**Messina**</u>

Plaintiffs allege that Messina made racially insensitive comments to D.C. and Tahlil during one study hall period.  (*See* SAC ¶ 27.)  Such conduct has been found insufficient to support an equal protection claim.

It is well settled that "[m]ere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983." *Baskerville v. Goord*, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000); *see Lee v. Mackay*, 29 F. App'x 679, 680-81 (2d Cir. 2002) (summary order) ("[Plaintiff] makes no cognizable equal protection claim from an allegation of racial comments alone."); *Matthews v. Barq*, No. 18-CV-855, 2021 WL 1582255, at *14 (N.D.N.Y. Jan. 12, 2021) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."), *report and recommendation adopted*, 2021 WL 1135452 (N.D.N.Y. Mar. 25, 2021); *Heyliger v. Krygier*, 335 F. Supp. 3d 482, 495 (W.D.N.Y. 2018) ("[U]se of racial epithets or discriminatory comments reflecting racial prejudice do not, without more, violate the Constitution."); *Stone v. Eamer*, No. 15-CV-97, 2018 WL 557872, at *7 (N.D.N.Y. Jan. 19, 2018) ("[W]hile the use of racial epithets is worthy of condemnation, it does not, without evidence of an additional injury, constitute an equal protection violation."); *Haussman v. Fergus*, 894 F. Supp. 142, 149 n.20 (S.D.N.Y. 1995)

("Offensive racial comments cannot form the basis of a § 1983 claim.").[3] "However, where verbal statements are accompanied by an appreciable injury, an equal protection claim may be cognizable." *Ali v. Connick*, 136 F. Supp. 3d 270, 276 (E.D.N.Y. 2015); *see Louime v. Lamanna*, No. 21-CV-9594, 2023 WL 1385180, at *8 (S.D.N.Y. Jan. 31, 2023) ("Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie."); *Toliver v. Fischer*, No. 12-CV-77, 2015 WL 403133, at *21 (N.D.N.Y. Jan. 29, 2015) ("[W]hen alleged harassment amounts to more than verbal taunts and includes other more serious, ongoing constitutional deprivations, a plaintiff should be given an opportunity to pursue his constitutional claims.").

Here, Plaintiffs allege that on one occasion Messina questioned D.C. and Tahlil about the color of their skin and the texture of their hair and asked whether each was a "'pure bred' Black." (SAC ¶ 27.) Plaintiffs do not allege that the statements were accompanied by any physical injury or other unlawful action, or that the conduct persisted beyond one isolated incident.[4] They therefore cannot state an equal protection claim against Messina. *See Matthews*, 2021 WL 1582255, at *14 (dismissing equal protection claim where plaintiff did not allege that

---

[3] While Messina's comments are reasonably understood as offensive, even more directly abusive remarks do not suffice to state an equal protection claim. *See, e.g.*, *Matthews*, 2021 WL 1582255, at *14 ("fa***t," "f*g," and "h**o"); *Heyliger*, 335 F. Supp. 3d at 489 (n-word); *Stone*, 2018 WL 557872, at *7 (n-word and "your black a**"); *Abecasis v. Mr. Chestnut*, No. 93-CV-4246, 1998 WL 151035, at *7 (S.D.N.Y. Mar. 31, 1998) ("Jewish bastard").

[4] Plaintiffs allege that they "sustain[ed] personal and psychological injuries" as a result of Defendants' conduct. (SAC ¶ 40.) "Although the intentional infliction of psychological pain may, under certain circumstances, constitute sufficient injury, . . . [a] plaintiff must allege specific and significant injuries in order to claim a constitutional violation caused by verbal harassment." *Timm v. Faucher*, No. 16-CV-531, 2017 WL 1230846, at *5-6 (D. Conn. Mar. 31, 2017). "Mere recitations that [a plaintiff] experienced mental anguish and severe emotional distress as a result of verbal threats are insufficient to support a claim of harassment without an allegation of actual injury." *Morgan v. Semple*, No. 16-CV-225, 2020 WL 887749, at *3 n.3 (D. Conn. Feb. 24, 2020). Here, Plaintiffs' allegation amounts to nothing more than a boilerplate claim of emotional distress. Accordingly, that allegation is insufficient to establish actual injury.

homophobic epithets were "accompanied by any physical abuse or other unlawful actions");
*Lexis v. Bellemare*, No. 18-CV-1403, 2020 WL 7043128, at *10 (D. Conn. Nov. 30, 2020)
(dismissing equal protection claim where plaintiff alleged that defendants "laughed and
snickered at him during two different strip searches" because plaintiff did not allege an
accompanying concrete injury); *Stone*, 2018 WL 557872, at *7 ("[W]hile some district courts
have held that continuous, severe verbal harassment can constitute an equal protection violation,
it is clear that an isolated incident where racial slurs are used cannot form the basis of an equal
protection claim.").

In their opposition brief, Plaintiffs do not address the standard for assessing equal
protection claims under § 1983 or otherwise dispute that they cannot state an equal protection
claim based on one instance of verbal harassment.  Rather, Plaintiffs argue that they have
adequately alleged that Messina violated DASA and that, as a result, they have stated an equal
protection claim.  (*See* Ps' Opp. at 3-8.)  That argument fails.  As an initial matter, courts in this
Circuit have uniformly held that no private right of action exists under DASA.  *See A.M. by
Manara v. J.S. by Sergeant*, No. 22-CV-3421, 2023 WL 7301313, at *5 (S.D.N.Y. Nov. 3,
2023); *DS by & through CS v. Rochester City Sch. Dist.*, No. 19-CV-6528, 2023 WL 4303551, at
*10 (W.D.N.Y. May 11, 2023), *report and recommendation adopted*, 2023 WL 4297036
(W.D.N.Y. June 30, 2023); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307,
326-27 (E.D.N.Y. 2016); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d
101, 108-09 (N.D.N.Y. 2016).

More to the point, "[i]t is axiomatic that violations of state law alone are insufficient to
state a claim for section 1983 relief."  *Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984); *see Young
v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998); *Myers v. Saxton*, No. 20-CV-465, 2020

WL 5074240, at *3 (N.D.N.Y. Aug. 27, 2020); *Westchester Cnty. Indep. Party v. Astorino*, 137

F. Supp. 3d 586, 619 (S.D.N.Y. 2015).  Thus, that Plaintiffs might have adequately alleged that

Messina violated DASA – an issue on which I express no opinion – cannot form the basis of

their equal protection claim under § 1983.  *See DS by & through CS v. Rochester City Sch. Dist.*,

No. 19-CV-6528, 2022 WL 673119, at *13 (W.D.N.Y. Mar. 7, 2022) (dismissing § 1983 claim

based on DASA violation); *Milton v. Valley Stream Cent. High Sch. Dist.*, No. 15-CV-127, 2018

WL 1136909, at *10 (E.D.N.Y. Mar. 1, 2018) (same); *see also Jones v. N.Y.C. Health & Hosp.*

*Corp.*, No. 00-CV-7002, 2003 WL 21262087, at *1 (S.D.N.Y. May 29, 2003) ("[A] plaintiff may

not advance a section 1983 claim based on an alleged violation of state rights, since section 1983

applies only to violations of federal statutes or the U.S. Constitution.").

Accordingly, Plaintiffs' claim against Messina must be dismissed.

### B.   Ferreira

Plaintiffs attempt to hold Ferreira liable under a deliberate indifference theory.

Specifically, Plaintiffs contend that Ferreira failed to protect D.C. and Tahlil from Messina

despite knowing that Messina had "racially insensitive tendencies," (SAC ¶ 22), and that

Ferreira's response to Messina's conduct was inadequate, (*id.* ¶ 32; Ps' Opp. at 7-8).[5]

To plausibly state an equal protection claim under a deliberate indifference theory,

> a plaintiff must plead that (1) he was harassed on the basis of a protected
> characteristic, including race, (2) the harassment was actually known to the
> defendant school officials, and (3) the defendant's response to such harassment was
> so clearly unreasonable in light of the known circumstances as to give rise to a

---

[5] Plaintiffs also argue that Ferreira can be held liable for Messina's conduct under
*respondeat superior*, (*see* SAC ¶ 47; Ps' Opp. at 10-11), but it is well settled that "the doctrine of
*respondeat superior* is not available to render a supervisor liable under Section 1983 for the
unconstitutional conduct of h[er] subordinates," *Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 638
(E.D.N.Y. 2017); *see Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *Patel v. City of*
*N.Y.*, No. 24-CV-7428, 2025 WL 2390852, at *6 (S.D.N.Y. Aug. 18, 2025); *Randle v.*
*Alexander*, 170 F. Supp. 3d 580, 592 (S.D.N.Y. 2016).

reasonable inference that the defendant himself intended for the harassment to occur.

*D.J. by Comfort*, 722 F. Supp. 3d at 163 (applying deliberate indifference standard to equal

protection claim based on teacher-on-student conduct).  These elements "work together to ensure

that the ultimate inquiry in a deliberate indifference case is one of racially discriminatory

purpose on the part of the defendant himself."  *DiStiso*, 691 F.3d at 241.

In the absence of an underlying constitutional violation by Messina, there is no

transgression to which Ferreira could have been deliberately indifferent.  *See Wesolowski v.*

*Harvey*, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011).  But even if there were, Plaintiffs fail to

state a claim.

As to Plaintiffs' claim that Ferreira was deliberately indifferent prior to the February 7

incident, Plaintiffs do not allege any other instances of misconduct by Messina.  Further,

Plaintiffs' allegation that Ferreira "knew, or upon reasonable research and inspection, should

have known that defendant, [Messina] had racially insensitive tendencies," (SAC ¶ 22), is

entirely conclusory.  There are no facts in the SAC from which the Court can infer that Ferreira

knew or had any reason to know that Messina might harass students based on their race.

Therefore, Plaintiffs have not adequately alleged that Ferreira was deliberately indifferent prior

to the February 7 incident.  *See Barmore v. Aidala*, No. 04-CV-445, 2006 WL 1978449, at *9

(N.D.N.Y. July 12, 2006) (dismissing deliberate indifference claim on summary judgment where

there were "no facts from which a reasonable fact finder could conclude that any of Defendants

did know that Plaintiff was being subjected to a racially hostile educational environment"

because "[i]t would be inappropriate to base a finding of discriminatory intent on a defendant's

failure to respond to circumstances that were not actually known to him"); *see also Alfaro*

*Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[T]o state a civil rights claim

under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation

of constitutional rights; allegations which are nothing more than broad, simple, and conclusory

statements are insufficient to state a claim under § 1983.").

As to the February 7 incident itself, Defendants do not dispute that Plaintiffs adequately

alleged that D.C. and Tahlil were harassed on the basis of race and that Ferreira had actual

knowledge thereof.  Rather, Defendants argue that Plaintiffs failed to allege that Ferreira's

conduct in response was so clearly unreasonable in light of the circumstances.  (*See* ECF No. 28

("Ds' Mem.") at 8-9.)  After Plaintiffs reported the incident to the District, Ferreira promptly

conducted an investigation and, upon determining that Plaintiffs' allegations were founded,

placed a disciplinary letter in Messina's employment file and mandated professional

development training.  (*See* SAC ¶¶ 28-30; ECF No. 21 Ex. A.)  Plaintiffs argue that the District

"condoned the actions of Messina[] in not taking substantial punitive actions against her," (SAC

¶ 32), but they do not explain, in either the SAC or their opposition brief, why Ferreira's

response was clearly unreasonable under the circumstances.  *See Wyler v. Conn. State Univ. Sys.*,

100 F. Supp. 3d 182, 198 (D. Conn. 2015) (dismissing deliberate indifference claim on summary

judgment where plaintiff did not "suggest in anything other than conclusory terms that

[defendant] could or should have acted any differently than he did in response to her

complaint").

In any event, I cannot find that Plaintiffs have plausibly alleged that Ferreira's conduct

was so clearly unreasonable in light of the circumstances.  There are no allegations in the SAC

that Messina's conduct persisted after the disciplinary action or that Messina had any further

contact with D.C. or Tahlil after the incident.  *See Arroyo v. City of Bridgeport*, No. 12-CV-

1258, 2015 WL 235065, at *5 (D. Conn. Jan. 16, 2015) (even if supervisor was deliberately

indifferent, that "indifference could not have caused Plaintiff's constitutional injuries" where, after plaintiff's complaints, there were no further incidents of harassment). And although reprehensible, her conduct was not so severe as to render anything less than termination unreasonable. *Cf. D.J. by Comfort*, 722 F. Supp. 3d at 155, 163-64 (denying motion to dismiss equal protection claim where teacher said to plaintiff in front of class, "[H]ow would you like it if I called you a n*****?" and principal, after terminating teacher, "cornered Plaintiff in a hallway of the school building to broach the idea of [teacher] returning" and later reinstated teacher over plaintiff's objection).

In these circumstances, Ferreira's disciplinary measures were not so clearly unreasonable as to give rise to a reasonable inference that Ferreira herself intended for the harassment to occur. *See Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 399 (E.D.N.Y. 2005) (finding under Title IX that "a principal receiving reports of possible teacher-to-student sexual harassment does not act with deliberate indifference where he or she promptly investigates, institutes corrective measures, and subsequently continues to monitor the situation"); *Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (dismissing equal protection claim on summary judgment where defendants administered "dozens of punishments . . . and a near equal number of passive interventions – such as presentations and workshops regarding bullying and intolerance" – in response to student-on-student bullying); *cf. G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 279 (E.D.N.Y. 2012) (denying motion to dismiss equal protection claim where plaintiff alleged that defendants "took no action at all to address the anti-Semitic harassment the Plaintiff was facing"). That Plaintiffs would have preferred a more severe sanction does not render Ferreira's conduct clearly unreasonable. *See Wyler*, 100 F. Supp. 3d at 195 (granting summary judgment on Title IX claim

where University promptly investigated and disciplined violator of sexual harassment policy, because no reasonable jury could find response to be clearly unreasonable, "and jurors should not be permitted to second-guess the disciplinary decision made in this case even though it falls well-short of plaintiff's desired outcome (termination of [the perpetrator's] employment"); *DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 497 (S.D.N.Y. 2008) ("Given the undisputed facts that defendants engaged in some forms of investigation into the Cafeteria Incident, even though plaintiffs may have been dissatisfied with the outcome, and the fact that JL was never again subjected to harassment by MC or L, this Court finds that defendants' response was not so deliberately indifferent as to be clearly unreasonable."), *aff'd*, 348 F. App'x 697 (2d Cir. 2009) (summary order).

Because Plaintiffs have failed to plausibly allege that Ferreira was deliberately indifferent to Messina's conduct, their claim against her must be dismissed.[6]

### C.    The District

"A school district may only face liability under § 1983 for constitutional violations pursuant to the well-established doctrine of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Condit v. Bedford Cent. Sch. Dist.*, No. 16-CV-6566, 2017 WL 4685546, at *11 (S.D.N.Y. Oct. 16, 2017); *see Kimble v. Kingston City Sch. Dist.*, 792 F. App'x 80, 81-82 (2d Cir. 2019) (summary order) (treating school district as municipality for purposes of § 1983 claim). "Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom." *Schuyler v. City of New Rochelle*, No. 23-CV-4151, 2024 WL 167289, at *2

---

[6] To the extent Plaintiffs contend that Ferreira can be held liable under § 1983 for alleged violations of DASA, that argument is rejected for the reasons set forth in Part III.A.

(S.D.N.Y Jan. 16, 2024); *see Biton v. City of N.Y.*, 416 F. Supp. 3d 244, 247 (E.D.N.Y. 2018)

("A municipality can only be held liable for a violation under § 1983, known as *Monell* liability,

if its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury.'") (quoting *Monell*, 436 U.S. at 694).

Thus, a plaintiff seeking to hold a municipality liable under *Monell* must show:  "(1) an official

policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional

right." *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 140 (2d Cir. 2010); *see Green v.

City of Mount Vernon*, No. 22-CV-8554, 2024 WL 710191, at *2 (S.D.N.Y. Feb. 21, 2024).

      The municipal liability claim here fails at the threshold because there can be no *Monell*

liability absent an underlying constitutional violation.  *See, e.g.*, *Fappiano v. City of N.Y.*, 640 F.

App'x 115, 121 (2d Cir. 2016) (summary order) ("[I]n the absence of an underlying

constitutional violation by a [municipal] employee there is no municipal liability under

*Monell*."); *Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013) (district court correctly determined

that municipality "cannot be liable under *Monell* where Plaintiff cannot establish a violation of

his constitutional rights"); *Vasquez v. County of Rockland*, No. 13-CV-5632, 2020 WL 883514,

at *7 (S.D.N.Y. Feb. 24, 2020) ("Failure to establish an underlying constitutional violation

necessarily defeats a *Monell* claim.") (collecting cases), *aff'd*, No. 20-3684, 2021 WL 5286676

(2d Cir. Nov. 15, 2021) (summary order); *DeRaffele v. City of New Rochelle*, No. 15-CV-282,

2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) ("It is well established that a *Monell* claim

cannot lie in the absence of an underlying constitutional violation.") (collecting cases).

Plaintiffs failed to establish their equal protection claims for the reasons detailed above. Accordingly, their *Monell* claim necessarily fails and must be dismissed.[7]

## IV.    <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended their complaint after having the benefit of the discussion about their equal protection claim at the March 14, 2025 pre-motion conference.  (*See* Minute Entry dated Mar. 14, 2025).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty*

---

[7] The Court thus need not address Defendants' other arguments for dismissal.  I note, however, that Plaintiffs' argument that they stated a *Monell* claim by alleging that Defendants violated a formal policy – in this case, DASA, (*see* Ps' Opp. at 8-10) – misapprehends *Monell*. To succeed on a *Monell* claim, a plaintiff must adequately allege that an official policy or custom caused the constitutional deprivation, not that the defendant's conduct violated a policy or custom.  *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove . . . that an official policy of the municipality caused the constitutional injury.").

*(NY), Inc*., No. 23-CV-710, 2023 WL 8538172, at \*3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at \*4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("[P]laintiff[s] need not be given leave to amend if [they] fail[] to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiffs] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at \*21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 26), and close the case.

**SO ORDERED.**

Dated:  October 8, 2025
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.